( Memorandum OF Law ATTached )

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR ___Sussex___ COUNTY

05    571

STATE OF DELAWARE
v.

( Exhibit A )

___Walter L. Smith___
Name of Movant on Indictment

No. _____
(to be supplied by Prothonotary)

___Walter Lee Smith___
Correct Full Name of Movant

FILED

AUG - 5 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

MOTION FOR POSTCONVICTION RELIEF

INSTRUCTIONS

(1) This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury.

(2) All grounds for relief and supporting facts must be included, and all questions must be answered briefly in the proper space on the form.

(3) Additional pages are not permitted. If more room is needed, use the reverse side of the sheet.

(4) No citation of authorities is required. If legal arguments are submitted, this should be done in a separate memorandum.

(5) Only convictions that were included in the same plea agreement or were tried together may be challenged in a single motion.

(6) When the motion is completed, the original must be mailed to the Prothonotary in the county in which the judgment of conviction was entered. No fee is required.

(7) The motion will be accepted if it conforms to these instructions. Otherwise, it will be returned with a notation as to the deficiency.

MOTION

1. County in which you were convicted ___Sussex___

2. Judge who imposed sentence ___T. Henley Graves___

3. Date sentence was imposed ___May 13 2002___

4. Offense(s) for which you were sentenced and length of sentence (s):
Attempt Rape First Degree: 30 years At Level V. Assault First Degree: 10 years Level V suspended After serving 3 year For 1 year Level 4 home confinement Burglary First degree: 10 years Level 5 suspended after serving 3 years for 7 years Level 3. Disguise 3 years Level V suspend For 3 years Level 3.

Exhibit A

5. Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgment(s) under attack in this motion?
Yes ( )   No ( ✗ )
If your answer is "yes," give the following information:
   Name and location of court(s) which imposed the other sentence(s):

   _____

   Date sentence(s) imposed: _____
   Length of sentence(s) _____

6. What was the basis for the judgment(s) of conviction? (Check one)
   Plea of guilty ( )
   Plea of guilty without admission of guilt ("Robinson plea") ( )
   Plea of nolo contendere ( )
   Verdict of jury ( ✗ )
   Finding of judge (nonjury trial) ( )

7. Judge who accepted plea or presided at trial ___T. Henley Graves___

8. Did you take the witness stand and testify? (Check one)
   No trial ( )   Yes ( ✗ )   No ( )

9. Did you appeal from the judgment of conviction? Yes ( ✗ )   No ( )
   If your answer is "yes," give the following information:
      Case number of appeal ___271  2002___
      Date of court's final order or opinion ___Dec 23  2002___

10. Other than a direct appeal from the judgment(s) of conviction, have you filed any other motion(s) or petition(s) seeking relief from the judgment(s) in state or federal court? Yes ( ) No ( ✗ )
    How many? ( )
    If your answer is "yes," give the following information as to each:
       Nature of proceeding(s) _____
       Grounds raised _____

       _____
       _____
       _____

       Was there an evidentiary hearing?_____
       Case number of proceeding(s) _____
       Date(s) of court's final order(s) or opinion(s) ___
       Did you appeal the result(s)?_____

11. Give the name of each attorney who represented you at the following stages of the proceedings relating to the judgment(s) under attack in this motion:
       At plea of guilty or trial ___Karl Haller Esq___
       On appeal ___Karl Haller Esq___
       In any postconviction proceeding ___Pro-Se___

12.    State every ground on which you claim that your rights were violated. If you fail to set forth grounds in this motion, you may be barred from raising additional grounds at a later date. You m state facts in support of the ground(s) which you claim. For your information, the following is a lis frequently raised grounds for relief (you may also raise grounds that are not listed here):  dou jeopardy; illegal detention, arrest, or search and seizure; coerced confession or guilty plea; uninforn waiver of the right to counsel, to remain silent, or to speedy trial; denial of the right to confr witnesses, to subpoena witnesses, to testify, or to effective assistance of counsel; suppression of favora evidence; unfulfilled plea agreement.

Ground one: The Verdict of the jury WAS against the weight of the
Supporting facts (state the facts briefly without citing cases):  evidence
Please see attached memorandum of Law

Ground two:  Ineffective Assistance of Counsel
Supporting facts (state the facts briefly without citing cases):
Please see attached memorandum of Law

Ground three: Impermissibly used RACE As A bAsis FoR peRenptory challenge
Supporting facts (state the facts briefly without citing cases):
Please see attached memorandum of Law

If any of the grounds listed were not previously raised, state briefly what grounds were not raised, a give your reason(s) for not doing so:

Wherefore, movant asks that the court grant him all relief to which he may be entitled in t proceeding.

_____
Signature of attorney (if any)

I declare the truth of the above under penalty of perjury.

12 - 18 - 03
Date signed

Walter P Smith
Signature of Movant
(Notarization not required)

forms/mtnpcr.wp  2/94

State of Delaware In and For
Sussex County


State of Delaware
    Respondent

         V                                    No. _____


Walter L. Smith Sr.
    Movant



Memorandum In support of Rule 61
Motion For Post conviction Relief


Comes now, the defendant, Walter L. Smith Pro-Se
Pursuant to Superior Court Rule 61. And respectfully move
this Honorable Court For the issuance of an order granting
reversal of Ruling in said case, based on the Constitional
Violations And errors of Law As stated In Attached Rule 61
Motion. This is defendants Memorandum In support of
Attached Postconviction Relief Motion.

1

Table of Citations

Nature of Proceedings

Procedural Considerations

Statement of Facts

Arguments:

I.   Ineffective Assistance of Counsel

II.  Insufficient Evidence to sustain conviction of Count I Attempted Rape in the First dg.

III. Prosecution Discriminatory use of Perrumptory Challenges.

NATURE OF PROCEEDINGS

In MARCH 14 2002 Defendant WALTER L. Smith Sr. was convicted of Attempted Rape, Assault First degree, Burglarly First degree, and Wearing a disguise by trial jury. Defendant WAS sentence to 36 years At Level V with conditional probation to Follow.

On Dec 23, 2002 the Delaware Supreme Court Affirmed the conviction and sentence see, Smith v State No. 813 2002 DeL.

Defendant File this motion FOR post conviction Relief in this court pursuant to this motion, defendant Request to be Released permanently From custody or in the Alternative A new trial. For the Reasons that follow the court should grant defendant post conviction Relief motion.

Under Delaware law the court must first determine whether defendant has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of his post-conviction relief claims. Bailey v State 588 A.2d 1121, 1127 Del. Supr. (1991); Younger v State, 580 A.2d 552 554 (Del. Supr. 1990) citing Harris v Reed 489 U.S. 255 (1989).

Under Rule 61 postconviction motion claims for relief must be brought within three years of the conviction becoming final. Super. Ct Crim. Rule 61(i)(2). Further, any ground for relief not asserted in a prior post conviction motion is thereafter barred, unless considerations of the claim is necessary in the interest of justice. Super. Ct. Crim. Rule 61(i)(2). Similarly grounds for relief not asserted in the proceedings leading to the judgment of conviction are thereafter barred unless the movant - defendant demonstrates:

(2) cause for the procedural default and prejudice from violation of the movant's rights. Super. Ct. Crim. R. 61(i)(3)

However, these bars to relief are inapplicable to jurisdictional challenges or to colorable claims of miscarriages of justice stemming from constitutional violations that "undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the judgment of the conviction. Super. Ct. Crim. Rule 61(i)(5).

In addition any ground for relief that was formerly adjudicated whether in the proceedings leading to the judgment of conviction in an appeal in a postconviction proceeding is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

4

In addition any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction in an appeal, in a postconviction proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

TABLE OF CHARTERS

## CASES

Bailey v State  588 A.2d 1121  Del. Supr. (1991)

Younger v State  580 A.2d 552  Del. Supr. (1990)

Harris v Reed  489 U.S. 255 (1989)

Batson v Kentucky 476 U.S. 79 (1986)

Jones v Ryan  987 F.2d 960 (3d. Cir)(1993)

Goverment v Forte  865 F.2d 59, 64 (3d.Cir 1989)

Riley v Delaware 496 A.2d 1013

Mitchell v State  750 S.W. 2d 936 (1988)

Stanley v State  313 Md. 50 542 A.2d 1267 (1988)

Clemons v U.S.  488 U.S. 835  843 F.2d 741 (3d Cir)(1988)

Harrison v Ryan 909 F.2d 84, 88 (3d Cir 1990) 498 U.S. 1003

Jackson v Virginia 99. S.Ct. 2781 443 U.S. 307(1979)

Mak v Dlodgell 970 F.2d 614(1992)

Gideon v Wainwright 372 U.S. 355,83 S.Ct. 792 (1963)

Powell v. Alabama 287 U.S. 45, 53 S.Ct 55(1932)

Citation Continued

Strickland v Washington 466 U.S. 688 (1984)

Culyer v Sullivan 446 U.S. 335 (1980)

Battle v Delo 19 F.3d 1547 (8th Cir 1994)

U.S. v Cronic 446 U.S. 48 S.Ct. 2039 (1984)

Harris v Woods 64 F.3d 1432 (9th Cir) (1995)

Albury v Del 551 A.2d 33 (1988)

Flamer v Del Supr. 585 A.2d 736 ( 1990)

Parson v Del Supr. 577 A.2d 754 (1990)

Younger v Del Supr. 580 A.2d 552 (1990)

Robinson v State Del 562 A.2d 1185 (1989)

Statues

U.S.C.A. 14   Del. C. Anno 184

U.S.C.A. 6

6

## Ineffective Assistance Of Counsel

Defendant Was Denied His Fundamental
Right To Effective Assistance Of Counsel
At Every Stage Of His Criminal Proceeding
All In The Violation Of The Equal Protection
Clause Under The Due Process Of Law
Provision Secured By Article 1 Section
7 Of The Delaware Constitution And
The Fifth, Sixth And Fourteenth
Amendments Of The United States Constitution


Defendant ,Walter Lee Smith, asserts and does
contend that he was truly denied any and all of
the rights to effective assistance of counsel at
all stages of the criminal proceedings. Beginning
with counsel (Karl Haller), ① Failing to interview
and to question both material and impeachment
witness, Follow by ; ② Haller Failing to effectively
prepare for defendant's trial and appeal ; ③
Failing to timely object to and raise on appeal

the prosecution's discriminatory use of peremptory challenges; (4) also Hallar was grossly ineffective when he fail to aggressively take on and assume the posture of an Adversary, not fully joining in the Adversarial process to properly represent the defendant; (5) trial counsel, Hallar, was ineffective when he fail to communicate and properly devise sound trial strategy with defendant; and (6) Finally counsel fail to raise on Appeal the claims of insufficient evidence on count 1 of Attempt Rape in the First degree.

Defendant/Movant claims that counsel is in Violation of the Rules of Professional Conduct (hereafter) Rules 1.1, 1.2, 1.3 and 1.4. By Counsel's Failure to Adequately prepare For trial and appeal (thoroughness and preparation); Failure to control his workload so that each matter can be handled Adequately; Failure to

investigate; Failure to stay in contact or answer letters and File defendant's requested motions; Failure to discuss with defendant before Filing his direct appeal (A lawyer shall keep a client reasonable informed about the status of a matter and promptly comply with reasonable request For information).

DeFendant contends that due to counsel's Failure to comply with these "Rules" this Failure prejudiced him and he did not receive a Fair trial without the eFFective assistance oF counsel he is guaranteed.

BeFore Strickland the courts Found prejudice resulting From cumulative errors only once, the courts explain in Mak v. Blodgell, 970 F.2d 614 (1992), cert. denied 113 S.Ct. (1993) the cumulative errors oF counsel's Failure to present mitigating evidence in the sentencing phase. The watershed case holding that there is a Federally based constitutional right to have the eFFective

Assistance of counsel, under the 6th Amendment, is the case of Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55 (1932). In addition to 6th Amendment right, the defendant/movant has a right to counsel under the 5th Amendment due process clause; the 6th Amendment right is binding on the States. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792 (1963); McCoy v. Court of Appeals, 486 U.S. 429, 108 S.Ct. 1895 (1988). The right is Fundamental to our system of justice and is meant to assure Fairness in the adversary criminal process. United States v. Morrison, 449 U.S. 361, 101 S.Ct. 665 (1981). Not only does the accused have a right to counsel, but more importantly, he has a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 688 (1984); Cuyler v. Sullivan, 446 U.S. 335 (1980); Battle v. Delo, 19 F.3d 1547 (8th.Cir.1994). The right of effective Assistance

of counsel has been defined as "the right of the accused to require the prosecution's case to survive at the crucible of the meaningful adversarial testing". United States v. Cronic, 446 U.S. 48, 04 S.ct. 2039 (1984) "Of all the rights an accused person has, the right to be represented by counsel is by far the most persuasive for it affects his ability to assert any other rights he may have".

Importantly, the type of breakdown in this adversarial process that implicates the 6th Amendment is not limited to counsel's performance as a whole since specific errors and omissions may be the focus of a claim of ineffective assistance of counsel.

Without a doubt, the landmark decision enunciating the legal principles attendant to the ineffective assistance of counsel was Strickland v. Washington, supra. Strickland, in its general terms, holds, the effectiveness of counsel is to be measured by the guide of "insuring a fair trial". Strickland

announcing a two prong test to determine whether counsel was ineffective, in the constitutional sense and more specifically, as follows:

1. Whether counsel's performance fell below objectively reasonable standard of professional competence, and

2. But for the unprofessional errors there is reasonable probability that the result of the proceeding would have been different.

In addition to the United States Court of Appeals decision following the dictates of Strickland, United States Supreme Court has reaffirmed the validity of the Strickland test. Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464 (1986).

In Harris v. Wood, 64 F.3d 1432 (9th Cir. 1995), the court gives further analysis to the old case, Strickland v. Washington, supra. In Harris, the court granted the petition for Writ of Habeas Corpus. Harris' defense counsel's many deficiencies

cumulatively prejudiced the defense. The court summarized the factual and procedural background, which is set out in more detail in Harris ex rel. Ramseyer v. Blodgett, 853 F. Supp. 1239, 1248-51 (W.D. Wash. 1994).

The courts point was "in Harris, supra, it was not just a single error, but the cumulative impacts of Andersons many errors that justified the reversal of his conviction."

On the State level, the Delaware courts have unanimously applied the Strickland test in reviewing Delaware's claims of ineffective assistance of counsel. Albury v. State, Del. Supr. 551 A.2d 33 (1988); Riley v. State, Del. Supr. 585 A.2d 719 (1990); Flamer v. State, Del. Supr. 585 A.2d 736 (1990); Parson v. State, Del. Supr. 577 A.2d 754 (1990).

The standard for ineffective assistance of counsel is to demonstrate that the counsel's conduct fell below "an objective standard for reasonableness". Id. Younger v. State, Del. Supr. 580 A.2d 552, 556 (1990); Robinson v. State, Del. Supr. 562 A.2d 1185 (1989);

compare Harris v. State, Del. Supr. 293 A.2d 291 (1972), A Strickland case, but generally approving the same basic principle. In reviewing the performance of counsel the totality of circumstances that is to be utilized.

Special considerations should be given to cases of serious magnitude. Vela v. Estell, 708 F.2d 954 (5th. Cir. 1983); State v. Davis, N.J. Supr. 561 A.2d 1089 (1989).

Notwithstanding the application of a "totality of the circumstances" standard, a single error may, standing alone, signal a constitutional deficiency. Chatom v. White, 858 F.2d. 1479 (11th. Cir. 1988); Nero V. Blackburn, 597 F.2d 991, 994 (5th. Cir. 1979).

Although a court of review will recognize the validity of counsel's strategic choice the label "trial strategy" does not automatically immunize an attorneys performance from a 6th Amendment challenge. Kellogg v. Scurr, 741 F.2d 1099 (8th. Cir. 1984).

Item #1: Defendant asserts and contends once again that trial counsel Mr. Haller fail to call any attention to and properly investigate testimony that would have been favorable to him. Defendant is directly referring to the statements made by the victim, to the medical personnel who examine her. Same Nurse, Tracie Roberts through and interputer was the first to question the victim on the incident, this was a short period after the crime; not surpassing 45 to 60 minutes. During this interview it was stated by the victim several contradictory statements that was used to convict the defendant and not used to prepare his defense, (because defendant's counsel failed to interview her on this manner, it was prejudical error). It was clearly stated when compared with other statements made by the victim after this one with Tracie Roberts, that the credibility of the victim was a core issue. Such statements as "I was unconscious for part of the

attack", then during trial the statement was changed.

During this interview it was never mention that assailant touched the victim's buttocks or breast, however during the trial this statement changed. It was never stated during this interview that the assailant allegedly tried to remove anything on his persons, however two days later while being question by PFC. Whitlam, Lt. John Miller, and by interputer PFC. Consuegra, the victim changed her story alleging that the "assailant wanted to pull down his zipper" and then "he pulled down his zipper".

Approximately eight days after the interview with the police the victim changed her story once again, while being questioned by Dr. Maribel Garcia-Zaragoza, this time alleging that the assailant "tried to unbutton his pants". Subsequently while testifying during trial the victim denied ever mentioning anything about a zipper or button, however her story now changes to

A "belt" that she allegedly heard being removed or seen being removed. Not to exclude that statement of that Assailant wiping vicks in her eyes and she couldn't see anything. Thus, interviewing same Nurse Tracie Roberts and Dr. Maribel Coarcia-Zaragoza should have become imperative to counsel (Haller) after doing a complete analysis of the inconsistency in the victim's statements. Because defendant's counsel failed to question or interview these two potential witnesses it was prejudicial error, because there is a great likelihood, with so many core elements being inconsistent and contradicted, the jury would have come to a different conclusion, but for counsel's egregious errors and omissions. The duty of counsel to investigate is also part of the defendant's right to have reasonable competent counsel. "The Principle Is So Fundamental That The Failure To Conduct A Reasonable Pre-trial

Investigation May In Itself Amount To Ineffective
Assistance Of Counsel". Lack of preparation can also
be equated with Failure to render effective assistance.

"The most able and competent lawyer in the world
cannot render effective assistance in defense of his
client if his lack of preparation for trial results in
his Failure to learn readily available facts which
might have afforded his client legitimate, justifiable
defense".

Item #2: Defendant asserts and contends once
again that counsel Haller Failed to take the time to
properly and effectively prepare for the defendant's
trial. In the case at bar, Haller never investigated
the documents prior to trial, all of which were readily
available to him, had he but made the effort and
gone to the trouble to review them. Preparation would
have entailed for him to at least adequately
investigate all the claims the defendant pointed
out in help to his defense. Also, this would have
attested to defendant's veracity, and also question

the State's ability to produce a credible witness. Trial counsel Haller could have also gone to the trouble of at least interviewing the alleged complaint, however, he did not! Instead counsel took the word of the Police Report and only relied on the incorrect information as to the actual events of the case. Trial counsel failed to conduct a reasonable investigation, much less a thorough investigation surrounding the disputed claims and the incorrect facts that permeated every fact of this case. Trial counsel had been told repeatedly by defendant that he was involved with the case but if counsel read the police reports and medical reports that counsel would see that the complaintant was being told what to say and that the complaintant's trial testimony was completely fixed to convict the defendant absent any evidence proving essential elements of the charges in the indictment.

The effectiveness of advocacy is not to be measured solely by what the lawyer does at

trial; without careful preparation the lawyer cannot fulfill the advocate's role. The duty to investigate is part of the defendant's right to reasonable, competent counsel. The principle is so fundamental that the failure to conduct a reasonable pre-trial investigation may in itself amount to ineffective assistance of counsel.

The extent of trial counsel's investigation was taken photos of outside area surrounding the allege crime scene, and of the outside of the building where the allege crime occurred. These photos were introduce as evidence with no value or purpose to show the jury the defense of the defendant. Also prior to trial counsel never came to see the defendant to discuss the case, and when counsel did come to see defendant, his work schedule was so packed, all that was said by counsel, was: "I'm just making sure you're still here". There was no discussion on possible trial strategies or to discuss the possible cross-examination of the defendant. Trial counsel just simply failed to adequately prepare to defend

defendant during the pretrial and trial stages.

The standards that are suppose to be observed by counsel in the proper discharge of duties were reiterated in United States v. DeCoster, D.C. App. 487 P.2d 1197 (1973), in the following format:

1) Counsel should be guided by the A.B.A Standards For defense Function (A.B.A projects on standards For Criminal Justice standards relating to the defense Function). App. Draft 1971;

2) Counsel should confer with client without delay and as often as necessary to elicit matters of defense or to ascertain that potential defenses are available;

3) Counsel should discuss, Fully, potential strategies and tactical choices with client;

4) Counsel should promptly advise the client of his rights and take all action necessary to protect them;

5) Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of

21

defense can be developed. This means that all available defenses must be raised and that the defense attorney or his agent should interview his own witnesses and government witnesses when they are accessible.

The DeCoster court indicated that if the defendant could demonstrate a substantial violation of any of those requirements under DeCoster, he has been denied effective representation. A comparison of requirements under DeCoster placed against list of deficiencies noted above, clearly demonstrates that there has been a substantial violation of the DeCoster standards.

According to McQueen v. Swenson, 498 F.2d 207 (8th. Cir. 1974), the most able and competent lawyer in the world cannot render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn of readily available facts which might have afforded his client a legitimate justifiable defense. The lawyer that does not probe, does not inquire, and does not seek

out all facts relevant to his client's case is too little more than to stand still at the time of the trial. Counsel may not sit idle by thinking that an investigation would be futile. Voyles v. Watkins, 489 F. Supp. 901 (D.t. Miss. 1980).

It is not enough to assume that counsel...thought that there was no defense, and exercised their best judgment in proceeding to trial without preparation. Neither they nor the court would say what a prompt and thorough going investigation might disclose as to the facts. Thus, no attempt was made to investigate. Citing Powell v. Alabama, supra.

Item #3: Defendant also contends that counsel was grossly ineffective when he failed to object and raise on direct appeal the prosecution's discriminatory use of peremptory challenges. A defendant can use evidence gather solely from his own trial to establish a prima facie case of the prosecution's discriminatory use of its peremptory challenges.

In particular Batson held that a defendant could establish a prima facie case of purposeful

discrimination by showing that 1) defendant is a member of a cognizable racial group; 2) the group's members have been excluded from the jury; and 3) the circumstances of the case raise an inference that the exclusion was based on race.

Batson further held that if the trial judge is satisfied that the defendant has established a prima facie case " the burden shifts to the State to come forward with a neutral explanation for challenging black jurors".

In the case at bar defendant Walter Smith, a young African American male was on trial for attempt rape of a Hispanic female, during the jury selection process the State never exercised their peremptory challenges while an "all white" jury was seated. When a young African American female was selected the prosecutor almost immediately struck the black potential juror for no apparent reason other than the juror's race. Defendant's trial counsel failed to recognize and object

to this blatant use of discriminatory peremptory challenge which resulted in the impenalment of an unconstitutional all white jury, was grossly ineffective. The State had no prior information on the jurors outside of their profile (e.g. job, race, age, etc.), because they themselves didn't know who was being selected, so with no preceptual material present there was no reason to exclude this potential black juror outside of race. In Jones v. Ryan, 987 F.2d 960 (3d. cir. 1993), the Circuit Court noted and affirming its ruling in Government of Virgin Islands v. Forte, 865 F.2d 59, 64 (3d. cir. 1989) aff'd mem., 904 F.2d 694 (1990), cert. denied, 111 S.ct. 2262 (1991), that "a violation of the Batson rule occur when race is used as a factor in the exercise of a peremptory challenge".

In Riley v. Delaware, 496 A.2d at 1013-20; See also Mitchell v. State, 295 Ark. 341 750 S.W.2d 936 (1988), Exclusion of one minority

group member is sufficient to establish a prima facie case when this juror is the only member of the defendant's race on the panel of prospective jurors. See, Stanley v. State, 313 Md. 50, 542 A.2d 1267, 1285 (1988). The discriminatory exclusion of the only African American potential juror on the panel was a violation of the defendant's right to the Equal Protection Clause of the Fourteeth Amendment. And because trial counsel did not object to and raise on appeal this fundamental right of an impartial jury he (Haller) was grossly ineffective and prejudice the defendant from obtaining a fair trial.

Item #4: Defendant does also present to this court his assertion and contention that counsel failed to aggressively take on and assume the mantle and posture of an adversary to the prosecution by not taking on, or fully joining in the adversarial process to properly represent the defendant's desires, views, and wishes as to his defense.

In essence, trial counsel went along with the case being presented by the state, instead of actually being a serious adversary and challenging the state's case.

Defense counsel who is appointed by the court has exactly the same duties, burdens, and responsibilities as a highly paid, paid in advance criminal defense lawyer.... It is indispensable for effective performance of responsibilities of an attorney who is appointed to represent an indigent accused, that the attorney be able to act independently of the Government and oppose it in adversary litigation.

Defendant asserts and contends that specific documents were not ever investigated, by Haller; all of which were readily available to him, or to his investigator. For him to effectively fight and to use in and for defendant's defense during trial and cross-examination of the state's witnesses.

Not only were the highly important medical records not reviewed, but trial counsel never push toward interviewing the alleged complaintant

in this case prior to trial, either by him, or by his investigator; instead trial counsel relied on the State's version and views of the case and the incorrect police reports.

In essence, it became a one way street, not a two lane avenue for interaction between the State's case and the defense's case.

"The Supreme Court stated that "Defendants facing felony charges are entitled to effective assistance of competent counsel, but beyond this matter, for the trial courts, with the admonition that if the right to counsel Guaranteed by the Constitution is to serve its purpose, defendant cannot be left to the mercies of incompetent counsel.

Defendant contends that trial counsel Haller was a defense attorney in name only. As counsel never offered or provided that assistance spoken of by the framers of the United States Constitution and its Amendments...," "Of all the rights that an accused person has the right to be represented

by counsel is by far the most persuasive for its affects his ability to assist any other rights he may have. In reading the test of the Sixth Amendment, the suggestion is more than just an alluding, as the Amendment requires not merely the provisions of counsel to the accused, but "Assistance" which is for and is to be "for his defense." Thus, the core purpose of the counsel guarantee was to assure assistance at trial.

Item #5: Defendant also contends that counsel Haller was ineffective when he fail to raise the claims of insufficient evidence on the charges of attempt rape in the First degree and burglary in the First degree at trial and on direct appeal. It was and still is a Fact of law to convict a defendant on attempt to commit a crime there must be a substantial step towards completion of the intended crime. In the case at bar this was not proving beyond a reasonable doubt and because counsel, Haller, Fail to

Acknowledge this on direct appeal, he was ineffective in rendering the defendant the effective counsel he was entitled to.

In this particular case the defendant was convicted by the jury of attempt rape in the First degree pursuant to section 773 (A) of 11 Del. Code but the evidence did not support such a conviction, especially not in the First degree. For instance, the complainant/victim in this case testified that she was awoken by someone "looking" through something under her bed, and upon her waking up the assailant was shocked. First and Foremost, if the intended crime to be committed before entering the residence was rape by intercourse, then the best course of action would have been to attack and subdue the allege complaintant while she sleep before she had a chance to acknowledge what was really happening, not look under the bed.

The defendant also contends that counsel Failed to Fully evaluate and analyze complaintant's testimony caused him great harm. The complaintant's testimony was inconsistent at best throughout the entire trial process. As deFined by 11 Del.C.§ 531 (2):

A person is guilty of an attempt to commit a crime iF the person: (2) intentionally does... Anything which under the circumstances as he believes them to be, is a substantial step in a course of planned to culminate in his commission of the crime by the person.

Section 532 defines the term "substantial step" as Follows:

A substantial step under 531 of this title is an act or omission which leaves no reasonable doubt to the defendant's intention to commit the crime which the defendant is charged with attempting.

The State's proof Failed to establish sufficient evidence that the defendant acted with the specific

intent, so as to constitute a "substantial step" toward attempting to have intercourse with the complaintant as required by 11 Del. c. § 531 (2) defining the essential elements of " Sexual Intercourse":

> Any act of physical union of the genitalia or anus of one person with the mouth, anus, or genitalia of another person. It occurs upon any penetration, however slight. Ejaculation is not required. This offense encompasses the crime commonly known as rape and sodomy.

During the trial of the defendant's, all the evidence of attempted rape related to neither attempt anal, vaginal, or oral intercourse. There was no evidence submitted by the state that would have supported a charge of attempted sexual intercourse.

The complaintant's testimony was introduce as the sole evidence to convict the defendant of attempt sexual intercourse which in and of itself exculpated

defendant of such intent or state of mind. The complaintant testified in response to when asked by defense counsel at (C-26, L.17-18) "You also stated no one tried to penetrate you with their penis"? At (C-26, L.19) the complaintant responded... "Exactly." As defense counsel continued examination it went as follow: There was no attempt to penetrate either (At C-26, L.20). The Complaintant relied at (C-26, L.21-22) "He did try with his hands". Counsel continued at (C-26, L.23) "So someone just touched your breast and buttocks and made no attempt to penetrate you? (At C-27, L.1). The Complaintant responded... "He touched my breast. He pulled on my leg. He turn me over. He put his hands between my buttocks. I felt a burning sensation as if his fingers had penetrated me. (At C-27, L.2).

Since a determination of the defendant's intent involves an examination of his mental state ... it necessarily must be proved by his statements

or actions - State v. Holley, 381 A.2d 539 (1977). This is one way of saying that a person's intention is to be infered from his conduct and the surrounding circumstances.

In the present case, the inference to be drawn from the defendant's allege actions does not satisfy the elements of intent beyond a reasonable doubt under Delaware Law.

The actions of defendant as stated by the complaintant during trial on re-cross examination, At (B-54, L.4) "Did you ever see his sexual member"? Plaintiff responded at (B-54, L.5) "No". At (B-54, L.7-8)..."Did you ever feel anything that might be his sexual member during this attack"? Again, plaintiff responded (At B-54, L.9) "No". Did you feel any unusal hardness in his hip region? (B-54, L.10-11) the plaintiff responded (B-54, L.12)..."No". When asked did the assailant lay on her? (At B-12, L.9) Plaintiff responded (B-12, L.10-11) "No", he was sitting on me like this (she was indicating a 90-degree angle

with her hands and it was reiterated in (B-12) when plaintiff indicated position), he was sitting on her the entire time. When asked did the assailant remove at any time any clothes he had on (at B-13, L.1-2) - The plaintiff responded "No." At (B-13, L.3) When asked did the Assailant ever do any Vibrating - pelvic movements? (B-13, L.4-5) Plaintiff responded "No." (B-13, L.6) When asked so there was no thrusting - pelvic movements? (B-13, L.10) Plaintiff responded "No", he was sitting the whole time on top of me. (B-13, L.11).

These were the actions of the allege defendant as testified to by the complaintant which demonstrate At no point did he act with the mental intent to engage in sexual intercourse with the allege victim or took a substantial step defined under Delaware Law that would have created a "beyond a reasonable doubt" conclusion in the jury minds that a clear and logical inference could be drawn from this insufficient evidence that it was defendant's intention to engage in sexual intercourse.

The trial counsel's Failure to raise these arguments on direct appeal was grossly ineffective and careless.

It is the defendant/movant's contention that he was unduly prejudiced by the counsel's (Haller's) conduct so as to undermine the outcome of the proceedings And there is more than a reasonable probability that but for trial counsel's egregious Failure to join Actively in the process, the results of the proceedings would have turned out differently.

As to arguments one and the attendant Five (5) Items under the claim of ineffective assistance of counsel, the defendant would ask that this Honorable Court take it upon itself After consideration And review of this Motion to Agree as to there being no doubt that the defendant was denied his Sixth Amendment Constitutional right; And was truly denied effective assistance of counsel; And as Such would now request that this Honorable court reverse the Convictions And sentences and grant a new trial.

Argument

There was Insufficient
evidence to sustain a
conviction on count I
of Attempted Rape in the
First degree.

Standard an Scope of Review it was error to allow the Appello.
to be convicted of a charge where there was not sufficient
proof. UNDER DUE PROCESS it requires that no person be made
to suffer the onus of a criminal conviction except upon sufficie.
proof, defined as evidence necessary to convince a trier of fact
beyond a reasonable doubt of the existence of every element
of the offense. According to Jackson v Virginia 99. S. ct 2781,
443 U.S. 307 (1979)

" the critical inquiry on review of the sufficiency of the evidence
o support a criminal conviction must be not only to determine
whether the jury was properly instructed on reasonable doubt, bu
o deterime whether the record evidence could reasonably suppor
a finding of guilt beyond a reasonable doubt. The relevant
question is whether after reviewing the evidence in the
ight most favorable to the prosecution, any rational trier of fact
.ould have found the essential elements of the crime beyond a

f the complaintiff when questioned by the state and the defense, the evidence in support of the defendant's conviction can not be fairly characterized As sufficient to have led. A Rational trier of fact to find guilt beyond a Reasonable doubt of Count one of Attempted Rape in the first degree. Although the evidence admittingly discloses and indecent assault it did not Establish and attempt to commit the crime of Rape in the first degree The was no evidence introduced during the trial that the defendant attempted to engage in forcible sexual intercourse with the plaintiff. There must be a substantial step towards the crime intended, and intent to produce emission semen. Without an attempt to engage in intercourse, its not sufficiently proving that the conscious purpose of he Appellant was to Rape the plaintiff. According to the testimony that was used As evidence during the trial the Appellant had the ability, the isolated conditions and proper amount of timing to Rape the plaintiff. The crime was not disturbed nor did anyone interfer with the activities of the situation the Appellant Allegelly just left.

Under the stature of Del 11 531(2) Attempt Is defined In pertinent part is follow: A person Is guilty of an attempt to commit a crime if the person (2) Intentionally does... Anything which under the circumstances as he believes them to be Is, A Substantial step In A course of conduct ianned to culminate in his commission of the crime by the person.

Section 532 defines the term "substantial step" As follow:
A substantial step under 531 of this title Is An act or omission which leaves no Reasonable doubt as to the defendant's intention to commit the crime which the defendant Is charged with attempting.

38

defendant acted with the specific intent, so as to constitute a "substantial step" toward attempting to have intercourse with the complaint. The victims testimony during cross-examination by the defense clearly establish Reasonable doubt As to whether the defendant's conscious purpose was to engage In Intercourse As described Under 11 Del.C. 761

> Any act of a physical union of the
> genitalia or anus of one person with the
> mouth, anus, or genitalia of another person.
> It occurs upon any penetration however
> slight.

In the case At bar where the intent to engage In Intercourse Is A vital issue, the complaintiff testified to the following. (B-12) 9 When ask did the Assailant lay on her? (B-12) 10, 11 Plaintiff Respond "No", he was sittin on me like this, She was indicting a 90-degree Angle with her hands. And its was Reinterated when (B-12) plaintiff indicated position, he was sitting on her the intire time. (B-13) 1, 2, When ask did the assailant at any time Remove any clothes he had on, Plaintiff Respond "No" (B-13) 3 When ask did the assailant ever do any vibrating-pelvic movements? (B-13) 4, 5 Plaintiff Respond "No" (B-13) 6 When Asked so their was No thrusting pelvic movements? (B-13) 10 Plaintiff Respond (B-13) 11 "No, he was sitting the whole time on top of me.

None of these Actions Are sufficient to sustain A conviction For attempted rape In the first degree when the Intent was never Established beyond A Reasonable doubt. If the sole purpose was to engage In Intercourse he Appellant would have atleast Attempted to Remove his clothing, or put him self In position to engage In "Intercourse". The Appellant never made a substantial step to the commission of the Rape, As the complaintiff testified.

He put his hands between my buttocks. I felt a burning sensation as if his fingers had penetrated me.

The burning sensation the complaintiff testified about was introduce Into evidence As "Vicks Vapor Rub. After the complaintiff's clothes were remove the Appellant never try to insert his touge or penis Into the victim but A Attempt was made to wipe Vicks Vapor Rub between the complaintiffs legs; when that was unsuccessful a second attempt was made by turning the complaintiff over and wiping it from the back of the buttocks. This Alone shows the mind state of the Appellant, wasn't to engage In Intercourse but to burn the complaintiff by Appling Vicks to her private area. No one can argue the intent was to burn the victim that's the only obvious Reason their would be to Apply the cream between the legs, And with such a harmful effect to open wounds theirs no possible way Intercourse could have manifested with the Appellant causing harm to himself. Also As the complaintiff stated on Re-cross examination: (C-26) 17,18 You Also stated no one ever tried to penetrate you with their penis? (C-26) 19 Exactly. There was no Attempted to penetrate either (C-26) 21,22 He did try with his hands.

At no certain point and time was the conscious purpose to intentionally engage In Intercourse As the Actions of the defendant proved their was never A phyiscal Attempt to engage In sexual Intercourse. For this Reason Alone the defendant should not have been convicted upon Insufficient. The defendant now Ask this Honorable Court to Reverse and Remand this case back for a new trial.

The prosecution violated Batson
v Kentucky by using peremptory
challenges to strike the only African
American from the jury panel because
of Race.

Scope and standard of review Batson held that the Equal
Protection Clause of the Fourteenth Amendment to United States Const.
precludes the prosecutor in a state criminal action from exercising
peremptory challenges based upon race.

In the case at bar the prosecutor violated the Batson v
Kentucky by exercising the use of peremptory challenges in a discriminatory
manner. United State Supreme Court's decision in Batson 476 U.S.
79, 106 S. Ct. 1712 90 L. Ed. 2d. 69 (1986). Batson held that Equal
Protection Clause of the Fourteenth Amendment to the United States
Const. precludes the prosecutor in a state criminal action from
exercising peremptory challenges based on race. A defendant can
use evidence gather solely from his own trial to establish a
prima facie case of the prosecutors discriminatory use of peremptory
challenges.

In particular Batson held that a defendant could establish a
Prima Facie case of purposeful discrimination by showing that
1) Defendant is a member of a cognizable racial group, 2)
The groups members have been excluded from the defendants jury, and

41

he exclusion was based on race. Batson further held that if the trial judge is satisfied that the defendant has establish a Prima Facie "the burden shifts to the state to come forward with a neutral explanation for challenging black jurors".

The prosecutor's explanation for the peremptory challenges must be more than an affirmation of good faith or an assumption that the challenged juror would have been partial to the defendant because of race. Although it need not rise to the level of justifying exercise of a challenge for cause it must be related to the particular case to be tried.

In the case a bar Walker L. Smith a young African American male was on trial for attempted rape of a Hispanic female. During the jury selection process the state never exercised their peremptory challenges, until a young African American female was selected to be on the jury. (This establish the First Requirement in Batson v Kentucky) And almost immediately after being selected to the jury panel the prosecutor, when before declining to use peremptory challenges; immediately seeing the black female struck her intentionally securing a all white jury. (This establish the second Requirement in Batson v Kentucky) The circumstances of the exclusion and the jury selection process the state had know prior information on the jurors, because they themselves didn't know who was being selected; outside of the jury profile sheet which contain, age, residence, employment, race. So with no preceptual material present their was no reason to exclude this potential juror outside of race. The state had the opportunity before this black juror was selected to exercise it's challenges but it decline, because it had what it wanted at that time a "all white jury"; so this gives reason to why once a black juror was selected they decided to

42

upon being selected. (This establish the third Requirement In Batson v Kentucky)

It is explicitly evident that the prosecutor exercise the peremptory challenges on discriminatory grounds. In Jones v Ryan 987 F.2d 960 (3d Cir. 1993) the Circuit Court noted and reaffirmed its ruling In Goverment of Virgin Island v Forte 865 F.2d 59, 64 (3d Cir) Aff'd mem. 904 F.2d 694 (1990) cert. denied, 111 S. Ct. 2262 (1991) that a violation of the Batson rule occurs when race is used as a factor in the exercise of a peremptory challenge."

In Riley v Delaware 496 A.2d At 1013-20 See also Mitchell v State 295 Ark. 341 750 S.W. 2d. 936 (1988) Exclusion of one minority group member is sufficient to establish a "Prima Facie" case when this juror is the only member of the defendant's race on the panel of prospective jurors; Stanley v State 313 Md. 50 542 A.2d 1267, 1285 (1988)

The discriminatory exclusion of the only African American potential juror on the panel was a violation of the defendant right to the Equal Protection Clause of the Fourteeth Amendment and his right to a fair and impartial jury Del. C. Ann. Const. Art 1 § 7.  U.S.C.A. Const. Amend 6.

Where as here, A Prima Facie case of discrimination has been established " the prosecutor must assert a clear specific reason beyond "intuitive judgment" or "good faith" For challenging members of a racial group. United States v Clemons 843 F. 2d 741, 747 (3d Cir.) cert. denied, 488 U.S. 835 (1988) (citations omitted) If no such explanation is forthcoming for even one prospective juror, the defendant is entitled to a new trial. See Jones 987 F.2d At 974-75 ( Reversing the denial of habeas corpus

43

UROR; <u>HARRISON</u> v <u>RYAN</u> 909 F.2d 84, 88 (3d Cir.). "Exclusion of one black juror from the jury on the basis of race is sufficient to require a new trial pursuant to <u>BATSON</u>"); cert. denied, 498 U.S. 1003 (1990).

As to Argument three under the claim the state exercise is peremptory challenges IN A discriminatory manner, the Appellant would ask that this Honorable court take it upon itself After consideration and review of this Motion to agree as to there being no doubt that the defendant WAS denied his Fourteenth Amendment Constitutional Right to the Equal Protection Clause. And As such would now Request that this Honorable Court Reverse the convictions and sentences and grant a new trial.