( Memorandum OF Law Attached )

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR ___Sussex___ COUNTY

STATE OF DELAWARE )
v. )
)                    ( Exhibit A )
___Walter L. Smith___ )        No. _____
Name of Movant on Indictment )        (to be supplied by Prothonotary)
)
___Walter Lee Smith___ )
Correct Full Name of Movant )

MOTION FOR POSTCONVICTION RELIEF

INSTRUCTIONS

(1)    This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury.

(2)    All grounds for relief and supporting facts must be included, and all questions must be answered briefly in the proper space on the form.

(3)    Additional pages are not permitted. If more room is needed, use the reverse side of the sheet.

(4)    No citation of authorities is required. If legal arguments are submitted, this should be done in a separate memorandum.

(5)    Only convictions that were included in the same plea agreement or were tried together may be challenged in a single motion.

(6)    When the motion is completed, the original must be mailed to the Prothonotary in the county in which the judgment of conviction was entered. No fee is required.

(7)    The motion will be accepted if it conforms to these instructions. Otherwise, it will be returned with a notation as to the deficiency.

MOTION

1.    County in which you were convicted ___Sussex___

2.    Judge who imposed sentence ___T. Henley Graves___

3.    Date sentence was imposed ___May 13 2002___

4.    Offense(s) for which you were sentenced and length of sentence (s):
Attempt Rape First Degree: 30 years at Level V. Assault First Degree: 10 years Level V suspended after serving 3 year for 1 year Level 4 home confinement Burglary First degree: 10 years Level 5 suspended after serving 3 years for 7 years Level 3. Disguise 3 years Level V suspend for 3 years Level 3.

Exhibit-A

5. Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgment(s) under attack in this motion?
Yes ( )    No ( ✗ )
If your answer is "yes," give the following information:
Name and location of court(s) which imposed the other sentence(s):

_____

Date sentence(s) imposed: _____
Length of sentence(s) _____

6. What was the basis for the judgment(s) of conviction? (Check one)
Plea of guilty ( )
Plea of guilty without admission of guilt ("Robinson plea") ( )
Plea of nolo contendere ( )
Verdict of jury ( ✗ )
Finding of judge (nonjury trial) ( )

7. Judge who accepted plea or presided at trial ___T. Henley Graves___

8. Did you take the witness stand and testify? (Check one)
No trial ( )    Yes ( ✗ )    No ( )

9. Did you appeal from the judgment of conviction? Yes ( ✗ )    No ( )
If your answer is "yes," give the following information:
Case number of appeal ___271   2002___
Date of court's final order or opinion ___Dec 23 2002___

10. Other than a direct appeal from the judgment(s) of conviction, have you filed any other motion(s) or petition(s) seeking relief from the judgment(s) in state or federal court? Yes ( ) No ( ✗ )
How many? ( )
If your answer is "yes," give the following information as to each:
Nature of proceeding(s) _____
Grounds raised _____

_____
_____
_____

Was there an evidentiary hearing? _____
Case number of proceeding(s) _____
Date(s) of court's final order(s) or opinion(s) _____
Did you appeal the result(s)? _____

11. Give the name of each attorney who represented you at the following stages of the proceedings relating to the judgment(s) under attack in this motion:
At plea of guilty or trial ___Karl Haller Esq___
On appeal ___Karl Haller Esq___
In any postconviction proceeding ___Pro-se___

12.    State every ground on which you claim that your rights were violated. If you fail to set forth grounds in this motion, you may be barred from raising additional grounds at a later date. You m state facts in support of the ground(s) which you claim. For your information, the following is a lis frequently raised grounds for relief (you may also raise grounds that are not listed here): dou jeopardy; illegal detention, arrest, or search and seizure; coerced confession or guilty plea; uninforn waiver of the right to counsel, to remain silent, or to speedy trial; denial of the right to confr witnesses, to subpoena witnesses, to testify, or to effective assistance of counsel; suppression of favora evidence; unfulfilled plea agreement.

Ground one: The Verdict of the jury was against the weight of the
Supporting facts (state the facts briefly without citing cases): 'evidence
Please See attached memorandum of Law

Ground two: Ineffective Assistance of Counsel
Supporting facts (state the facts briefly without citing cases):
Please see attached memorandum of Law

Ground three: Impermissibly used Race As A basis For peremptory challenge
Supporting facts (state the facts briefly without citing cases):
Please see attached memorandum of Law

If any of the grounds listed were not previously raised, state briefly what grounds were not raised, a give your reason(s) for not doing so: _____

_____

Wherefore, movant asks that the court grant him all relief to which he may be entitled in t proceeding.

_____
Signature of attorney (if any)

I declare the truth of the above under penalty of perjury.

12 - 18 - 03
Date signed

Walter P. Smith
Signature of Movant
(Notarization not required)

State of Delaware in and for
Sussex County


State of Delaware
    Respondent

        v                                No. _____


    Walter L. Smith Sr.
    Movant


## Memorandum in support of Rule 61
## Motion for Post conviction Relief

Comes now, the defendant, Walter L. Smith Pro-Se
Pursuant to Superior Court Rule 61. And respectfully move
this Honorable Court For the issuance of an order granting
reversal of Ruling in said case, based on the Constitutional
Violations And errors of Law As stated in Attached Rule 61
Motion. This is defendants Memorandum in support of
Attached Postconviction Relief Motion.

1

Table of Contents

Table of Citations

Nature of Proceedings

Procedural Considerations

Statement of Facts

Arguments:

I.   Ineffective Assistance of Counsel

II.  Insufficient Evidence to sustain conviction of Count I Attempted Rape in the First dg.

III. Prosecution Discriminatory use of Peremptory Challenges.

<u>Summarize of Proceedings</u>

In March 14 2002 Defendant Walter L. Smith Sr. was convicted of Attempted Rape, Assault First degree, Burglary first degree, and Wearing a disguise by trial jury. Defendant was sentence to 36 years at Level V with conditional probation to follow.

On Dec 23, 2002 the Delaware Supreme Court affirmed the conviction and sentence see, Smith v State No. 813 2002 Del.

Defendant File this motion for post conviction relief in his court pursuant to this motion, defendant request to be released permanently from custody or in the alternative a new trial. For the reasons that follow the court should grant defendant post conviction relief motion.

PROCEDURAL CONSIDERATIONS

Under Delaware law the court must first determine whether defendant has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of his post-conviction relief claims. Bailey v State 588 A.2d 1121, 1127 Del. Supr. (1991); Younger v State, 580 A.2d 552 554 (Del. Supr. 1990) citing Harris v Reed 489 U.S. 255 (1989).

Under Rule 61 post conviction motion claims for relief must be brought within three years of the conviction becoming final. Super. Ct Crim. Rule 61(i)(2). Further, any ground for relief not asserted in a prior post conviction motion is thereafter barred, unless considerations of the claim is necessary in the interest of justice Super. Ct Crim. Rule 61(i)(2). Similarly grounds for relief not asserted in the proceedings leading to the judgment of conviction are thereafter barred unless the movant - defendant demonstrates:

(2)  cause for the procedural default and prejudice from
       violation of the movant's rights. Super. Ct. Crim. R. 61(i)(3)

However, these bars to relief are inapplicable to jurisdictional challenge or to colorable claims of miscarriages of justice stemming from constitutional violations that "undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the judgment of the conviction. Super. Ct. Crim. Rule 61(i)(5).

In addition any ground for relief that was formerly adjudicated whether in the proceedings leading to the judgment of conviction in an appeal in a post conviction proceeding is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

4

ground for Relief that WAS Formerly Adjudicated, whether in the proceedings leading to the judgment of conviction in an appeal, in a postconviction proceeding, is thereafter barred, unless Reconsideration of the claim is warranted in the interest of justice.

TABLE OF CITATIONS

CASES

Bailey v State 588 A.2d 1121 Del. Supr. (1991)

Younger v State 580 A.2d 552 Del. Supr. (1990)

Harris v Reed 489 U.S. 255 (1989)

Batson v Kentucky 476 U.S. 79 (1986)

Jones v Ryan 987 F.2d 960 (3d. Cir)(1993)

Goverment v Forte 865 F.2d 59, 64 (3d. Cir 1989)

Riley v Delaware 496 A.2d 1013

Mitchell v State 750 S.W. 2d 936 (1988)

Stanley v State 313 Md. 50 542 A.2d 1267 (1988)

Clemons v U.S. 488 U.S. 835 843 F.2d 741 (3d Cir)(1988)

Harrison v Ryan 909 F.2d 84, 88 (3d Cir 1990) 498 U.S. 1003

Jackson v Virginia 99. S.Ct. 2781 443 U.S. 307(1979)

Mak v Dlodgell 970 F.2d 614(1992)

Gideon v. Wainwright 372 U.S. 355,83 S. Ct. 792 (1963)

Powell v. Alabama 287 U.S. 45, 53 S.Ct. 55(1932)

Citation Continued

Strickland v Washington 466 U.S. 688 (1984)

Culyer v Sullivan 446 U.S. 335 (1980)

Battle v Delo 19 F.3d 1547 (8th Cir 1994)

U.S. v Cronic 446 U.S. 48 S.Ct. 2039 (1984)

Harris v Woods 64 F.3d 1432 (9th Cir) (1995)

Albury v Del 551 A.2d 33 (1988)

Flamer v Del Supr. 585 A.2d 736 (1990)

Parson v Del Supr. 577 A.2d 754 (1990)

Younger v Del Supr. 580 A.2d 552 (1990)

Robinson v State Del 562 A.2d 1185 (1989)

Statues

U.S.C.A. 14   Del.C. Anno 197

U.S.C.A. 6                    6

Ineffective Assistance Of Counsel

Defendant Was Denied His Fundamental
Right To Effective Assistance Of Counsel
At Every Stage Of His Criminal Proceeding
All In The Violation Of The Equal Protection
Clause Under The Due Process Of Law
Provision Secured By Article 1 Section
7 Of The Delaware Constitution And
The Fifth, Sixth And Fourteenth
Amendments Of The United States Constitution

Defendant, Walter Lee Smith, asserts and does

contend that he was truly denied any and all of

the rights to effective assistance of counsel at

All stages of the criminal proceedings. Beginning

With Counsel (Karl Haller), ① Failing to interview

And to Question both material and impeachment

witness, Follow by ; ② Haller Failing to effectively

prepare For defendant's trial And Appeal ; ③

Failing to timely object to And raise on Appeal

the prosecution's discriminatory use of peremptory challenges; (4) also Hallar was grossly ineffective when he fail to aggressively take on and assume the posture of an adversary. Not fully joining in the adversarial process to properly represent the defendant; (5) trial counsel, Hallar, was ineffective when he fail to communicate and properly devise sound trial strategy with defendant; and (6) finally counsel fail to raise on appeal the claims of insufficient evidence on count 1 of attempt Rape in the first degree.

· Defendant/movant claims that counsel is in violation of the Rules of Professional Conduct (hereafter) Rules 1.1, 1.2, 1.3 and 1.4. By counsel's failure to adequately prepare for trial and appeal (thoroughness and preparation); failure to control his workload so that each matter can be handled adequately; failure to

investigate; Failure to stay in contact or answer letters and File defendant's requested motions; Failure to discuss with defendant before Filing his direct appeal (A lawyer shall keep a client reasonable informed about the status of a matter and promptly comply with reasonable request For information).

Defendant contends that due to counsel's Failure to comply with these "Rules" this Failure prejudiced him and he did not receive a Fair trial without the effective assistance of counsel he is guaranteed.

. Before Strickland the courts Found prejudice resulting From cumulative errors only once, the courts explain in Mak v. Blodgell, 970 F.2d 614 (1992), cert. denied 113 S.Ct. (1993) the cumulative errors of counsel's Failure to present mitigating evidence in the sentencing phase. The watershed case holding that there is a Federally based constitutional right to have the effective

Assistance of counsel, under the 6th Amendment, is the case of Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55 (1932). In addition to 6th Amendment right, the defendant/movant has a right to counsel under the 5th Amendment due process clause; the 6th Amendment right is binding on the States. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 752 (1963); McCoy v. Court of Appeals, 486 U.S. 429, 108 S.Ct. 1895 (1988). The right is fundamental to our system of justice and is meant to assure fairness in the adversary criminal process. United States v. Morrison, 449 U.S. 361, 101 S.Ct. 665 (1981). Not only does the accused have a right to counsel, but more importantly, he has a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 688 (1984); Culyer v. Sullivan, 446 U.S. 335 (1980); Battle v. Delo, 19 F.3d 1547 (8th.Cir.1994). The right of effective assistance

of counsel has been defined as "the right of the accused
to require the prosecution's case to survive at the crucible
of the meaningful adversarial testing". United States v.
Cronic, 446 U.S. 48, 04 S.Ct. 2039 (1584) "of all the
rights an accused person has, the right to be represented
by counsel is by far the most persuasive for it affects
his ability to assert any other rights he may have".

Importantly, the type of breakdown in this
adversarial process that implicates the 6th Amendment
is not limited to counsel's performance as a whole
since specific errors and omissions may be the
focus of a claim of ineffective assistance of counsel.

Without a doubt, the landmark decision enunciating
the legal principles attendant to the ineffective
assistance of counsel was Strickland v. Washington,
supra. Strickland, in its general terms, holds, the
effectiveness of counsel is to be measured by the
guide of "insuring a fair trial". Strickland

Announcing a two prong test to determine whether counsel was ineffective, in the constitutional sense and more specifically, as follows:

1. Whether counsel's performance fell below objectively reasonable standard of professional competence, and

2. But for the unprofessional errors there is reasonable probability that the result of the proceeding would have been different.

In addition to the United States Court of Appeals decision following the dictates of Strickland, United States Supreme Court has reaffirmed the validity of the Strickland test. Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464 (1986).

In Harris v. Wood, 64 F.3d 1432 (9th Cir. 1995), the court gives further analysis to the old case, Strickland v. Washington, supra. In Harris, the court granted the petition for Writ of Habeas Corpus. Harris' defense counsel's many deficiencies

cumulatively prejudiced the defense. The court summarized the factual and procedural background, which is set out in more detail in Harris ex rel. Ramseyer v. Blodgett, 853 F.Supp. 1239, 1248-51 (W.D.Wash. 1994).

The courts point was "in Harris, supra, it was not just a single error, but the cumulative impacts of Andersons many errors that justified the reversal of his conviction".

On the State level, the Delaware courts have unanimously applied the Strickland test in reviewing Delaware's claims of ineffective assistance of counsel. Albury v. State, Del. Supr. 551 A.2d 33 (1988); Riley v. State, Del. Supr. 585 A.2d 719 (1990); Flamer v. State, Del. Supr. 585 A.2d 736 (1990); Parson v. State, Del. Supr. 577 A.2d 754 (1990).

The standard for ineffective assistance of counsel is to demonstrate that the counsel's conduct fell below "an objective standard for reasonableness". Id. Younger v. State, Del. Supr. 580 A.2d 552, 556 (1990); Robinson v. State, Del. Supr. 562 A.2d 1185 (1989);

13

compare Harris v. State, Del. Supr. 293 A.2d 291 (1972), A Strickland case, but generally approving the same basic principle. In reviewing the performance of counsel the totality of circumstances that is to be utilized.

Special considerations should be given to cases of serious magnitude. Vela v. Estell, 708 F.2d 954 (5th. Cir. 1983); State v. Davis, N.J. Supr. 561 A.2d 1089 (1989).

Notwithstanding the application of a "totality of the circumstances" standard, a single error may, standing alone, signal a constitutional deficiency. Chatom v. White, 858 F.2d. 1479 (11th. Cir. 1988); Nero v. Blackburn, 597 F.2d 991, 994 (5th. Cir. 1979).

Although a court of review will recognize the validity of counsel's strategic choice the label "trial strategy" does not automatically immunize an attorneys performance from a 6th Amendment challenge. Kellogg v. Scurr, 741 F.2d 1099 (8th. Cir. 1984).

14

Item #1: Defendant asserts and contends once again that trial counsel Mr. Haller fail to call any attention to and properly investigate testimony that would have been favorable to him. Defendant is directly referring to the statements made by the victim, to the medical personnel who examine her. Same nurse, Tracie Roberts through and interputer was the first to question the victim on the incident, this was a short period after the crime; not surpassing 45 to 60 minutes. During this interview it was stated by the victim several contradictory statements that was used to convict the defendant and not used to prepare his defense, (because defendant's counsel failed to interview her on this manner, it was prejudical error). It was clearly stated when compared with other statements made by the victim after this one with Tracie Roberts, that the credibility of the victim was a core issue. Such statements as " I was unconscious for part of the

attack", then during trial the statement was changed.

During this interview it was never mention that assailant touched the victim's buttocks or breast, however during the trial this statement changed. It was never stated during this interview that the assailant allegedly tried to remove anything on his persons, however two days later while being question by PFC. Whitlam, Lt. John Miller, and by interputer PFC. Consuegra, the victim changed her story alleging that the "assailant wanted to pull down his zipper" and then "he pulled down his zipper".

Approximately eight days after the interview with the police the victim changed her story once again, while being questioned by Dr. Maribel Garcia-Zaragoza, this time alleging that the assailant "tried to unbutton his pants". Subsequently while testifying during trial the victim denied ever mentioning anything about a zipper or button, however her story now changes to

16

a "belt" that she allegedly heard being removed or seen being removed. Not to exclude that statement of that Assailant wiping vicks in her eyes and she couldn't see anything. Thus, interviewing same nurse Tracie Roberts and Dr. Maribel Garcia-Zaragoza should have become imperative to counsel (Haller) after doing a complete Analysis of the inconsistency in the victim's statements. Because defendant's counsel failed to question or interview these two potential witnesses it was prejudicial error, because there is a great likelihood, with so many core elements being inconsistent and contradicted, the jury would have come to a different conclusion, but for counsel's egregious errors and omissions. The duty of counsel to investigate is also part of the defendant's right to have reasonable competent counsel. "The Principle Is So Fundamental That The Failure To Conduct A Reasonable Pre-trial

Investigation May In Itself Amount To Ineffective Assistance Of Counsel". Lack of preparation can also be equated with failure to render effective assistance. "The most able and competent lawyer in the world cannot render effective assistance in defense of his client if his lack of preparation for trial results in his failure to learn readily available facts which might have afforded his client legitimate, justifiable defense."

Item #2: Defendant asserts and contends once again that counsel Haller failed to take the time to properly and effectively prepare for the defendant's trial. In the case at bar, Haller never investigated the documents prior to trial, all of which were readily available to him, had he but made the effort and gone to the trouble to review them. Preparation would have entailed for him to at least adequately investigate all the claims the defendant pointed out in help to his defense. Also, this would have attested to defendant's veracity, and also question

18

the State's ability to produce a credible witness. Trial counsel Haller could have also gone to the trouble of at least interviewing the alleged complaint, however, he did not! Instead counsel took the word of the Police Report and only relied on the incorrect information as to the actual events of the case. Trial counsel failed to conduct a reasonable investigation, much less a thorough investigation surrounding the disputed claims and the incorrect facts that permeated every fact of this case. Trial counsel had been told repeatedly by defendant that he was involved with the case but if counsel read the police reports and medical reports that counsel would see that the complaintant was being told what to say and that the complaintant's trial testimony was completely fixed to convict the defendant absent any evidence proving essential elements of the charges in the indictment.

The effectiveness of advocacy is not to be measured solely by what the lawyer does at

trial; without careful preparation the lawyer cannot
Fulfill the advocate's role. The duty to investigate is
part of the defendant's right to reasonable, competent
counsel. The principle is so Fundamental that the failure
to conduct a reasonable pre-trial investigation may in
itself amount to ineffective assistance of counsel.

The extent of trial counsel's investigation was
taken photos of outside area surrounding the allege
crime scene, and of the outside of the building where
the allege crime occurred. These photos were introduce
as evidence with no value or purpose to show the
jury the defense of the defendant. Also prior to
trial counsel never came to see the defendant to
discuss the case, and when counsel did come to see
defendant, his work schedule was so packed, all
that was said by counsel, was: "I'm just making
sure you're still here". There was no discussion on
possible trial strategies or to discuss the possible
cross-examination of the defendant. Trial counsel
just simply failed to adequately prepare to defend

20

defendant during the pretrial and trial stages.

The standards that are suppose to be observed by counsel in the proper discharge of duties were reiterated in United States v. DeCoster, D.C. App. 487 P.2d 1197 (1973), in the following format:

1) Counsel should be guided by the A.B.A Standards For defense Function (A.B.A projects on standards for criminal Justice Standards relating to the defense Function). App. Draft 1971;

2) Counsel should confer with client without delay and as often as necessary to elicit matters of defense or to ascertain that potential defenses are available;

3) Counsel should discuss, fully, potential strategies and tactical choices with client;

4) Counsel should promptly advise the client of his rights and take all action necessary to protect them;

5) Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of

defense can be developed. This means that all available defenses must be raised and that the defense attorney or his agent should interview his own witnesses and government witnesses when they are accessible.

The DeCoster court indicated that if the defendant could demonstrate a substantial violation of any of those requirements under DeCoster, he has been denied effective representation. A comparison of requirements under DeCoster placed against list of deficiencies noted above, clearly demonstrates that there has been a substantial violation of the DeCoster standards.

· According to McQueen v. Swenson, 498 F.2d 207 (8th. Cir. 1974), the most able and competent lawyer in the world cannot render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn of readily available facts which might have afforded his client a legitimate justifiable defense. The lawyer that does not probe, does not inquire, and does not seek

out all facts relevant to his client's case is too little
more than to stand still at the time of the trial. Counsel
may not sit idle by thinking that an investigation would
be futile. Voyles v. Watkins, 489 F. Supp. 901 (D.C. Miss. 1980).

It is not enough to assume that counsel...thought
that there was no defense, and exercised their best judgment
in proceeding to trial without preparation. Neither they
nor the court would say what a prompt and thorough
going investigation might disclose as to the facts. Thus,
no attempt was made to investigate. Citing Powell v.
Alabama, supra.

Item #3: Defendant also contends that counsel
was grossly ineffective when he failed to object and
raise on direct appeal the prosecution's discriminatory
use of peremptory challenges. A defendant can
use evidence gather solely from his own trial to
establish a prima facie case of the prosecution's
discriminatory use of its peremptory challenges.

In particular Batson held that a defendant
could establish a prima facie case of purposeful

discrimination by showing that 1) defendant is a member of a cognizable racial group; 2) the group's members have been excluded from the jury; and 3) the circumstances of the case raise an inference that the exclusion was based on race.

Batson further held that if the trial judge is satisfied that the defendant has established a prima facie case " the burden shifts to the State to come forward with a neutral explanation for challenging black jurors".

In the case at bar defendant Walter Smith, a young African American male was on trial for attempt rape of a Hispanic female, during the jury selection process the State never exercised their peremptory challenges while an "all white" jury was seated. When a young African American female was selected the prosecutor almost immediately struck the black potential juror for no apparent reason other than the juror's race. Defendant's trial counsel failed to recognize and object

to this blatant use of discriminatory peremptory challenge which resulted in the impenalment of an unconstitutional all white jury, was grossly ineffective. The State had no prior information on the jurors outside of their profile (e.g. job, race, age, etc.), because they themselves didn't know who was being selected, so with no preceptual material present there was no reason to exclude this potential black juror outside of race. In Jones v. Ryan, 987 F.2d 960 (3d.cir.1993), the Circuit Court noted and affirming its ruling in Government of Virgin Islands v. Forte, 865 F.2d 59, 64 (3d. cir. 1989) aff'd mem., 904 F.2d 694 (1990), cert. denied, 111 s.ct. 2262 (1991), that "a violation of the Batson rule occur when race is used as a factor in the exercise of a peremptory challenge."

In Riley v. Delaware, 496 A.2d At 1013-20; See Also Mitchell v. State, 295 Ark.341 750 S.W.2d 936 (1988), Exclusion of one minority

group member is sufficient to establish a prima facie case when this juror is the only member of the defendant's race on the panel of prospective jurors. See, Stanley v. State, 313 Md. 50, 542 A.2d 1267, 1285 (1988). The discriminatory exclusion of the only African American potential juror on the panel was a violation of the defendant's right to the Equal Protection Clause of the Fourteeth Amendment. And because trial counsel did not object to and raise on appeal this fundamental right of an impartial jury he (Haller) was grossly ineffective and prejudice the defendant from obtaining a fair trial.

Item #4: Defendant does also present to this court his assertion and contention that counsel failed to aggressively take on and assume the mantle and posture of an adversary to the prosecution by not taking on, or fully joining in the adversarial process to properly represent the defendant's desires, views, and wishes as to his defense.

In essence, trial counsel went along with the case being presented by the state, instead of actually being a serious adversary and challenging the state's case.

Defense counsel who is appointed by the court has exactly the same duties, burdens, and responsibilities as a highly paid, paid in advance criminal defense lawyer.... It is indispensable for effective performance of responsibilities of an attorney who is appointed to represent an indigent accused, that the attorney be able to act independently of the Government and oppose it in adversary litigation.

Defendant asserts and contends that specific documents were not ever investigated, by Haller; all of which were readily available to him, or to his investigator. For him to effectively fight and to use in and for defendant's defense during trial and cross-examination of the State's witnesses.

Not only were the highly important medical records not reviewed, but trial counsel never push toward interviewing the alleged complaintant

in this case prior to trial, either by him, or by his investigator; instead trial counsel relied on the State's version and views of the case and the incorrect police reports.

In essence, it became a one way street, not a two lane avenue for interaction between the State's case and the defense's case.

"The Supreme Court stated that "Defendants Facing Felony charges are entitled to effective assistance of competent counsel, but beyond this matter, for the trial courts, with the admonition that if the right to counsel Guaranteed by the Constitution is to serve it's purpose, defendant cannot be left to the mercies of incompetent counsel.

Defendant contends that trial counsel Haller was a defense attorney in name only. As counsel never offered or provided that assistance spoken of by the Framers of the United States Constitution and its Amendments...," "Of all the rights that an accused person has the right to be represented

by counsel is by far the most persuasive for its affects his ability to assist any other rights he may have. In reading the test of the Sixth Amendment, the suggestion is more than just an alluding, as the Amendment requires not merely the provisions of counsel to the accused, but "Assistance" which is for and is to be "for his defense". Thus, the core purpose of the counsel guarantee was to assure assistance at trial.

Item#5: Defendant also contends that counsel Haller was ineffective when he fail to raise the claims of insufficient evidence on the charges of attempt rape in the First degree and burglary in the First degree at trial and on direct appeal. It was and still is a fact of law to convict a defendant on attempt to commit a crime there must be a substantial step towards completion of the intended crime. In the case at bar this was not proving beyond a reasonable doubt and because counsel, Haller, fail to

acknowledge this on direct appeal, he was ineffective in rendering the defendant the effective counsel he was entitled to.

In this particular case the defendant was convicted by the jury of attempt rape in the First degree pursuant to section 773(A) of 11 Del. Code but the evidence did not support such a conviction, especially not in the First degree. For instance, the complainant/victim in this case testified that she was awoken by someone "looking" through something under her bed, and upon her waking up the assailant was shocked. First and Foremost, if the intended crime to be committed before entering the residence was rape by intercourse, then the best course of action would have been to attack and subdue the allege complainant while she sleep before she had a chance to acknowledge what was really happening, not look under the bed.

30

The defendant also contends that counsel failed to fully evaluate and analyze complaintant's testimony caused him great harm. The complaintant's testimony was inconsistent at best throughout the entire trial process. As defined by 11 Del.c.§ 531(2):

> A person is guilty of an attempt to commit a crime if the person: (2) intentionally does... Anything which under the circumstances as he believes them to be, is a substantial step in a course of planned to culminate in his commission of the crime by the person.

Section 532 defines the term "substantial step" as follows:

> A substantial step under 531 of this title is an act or omission which leaves no reasonable doubt to the defendant's intention to commit the crime which the defendant is charged with attempting.

The State's proof failed to establish sufficient evidence that the defendant acted with the specific

intent, so as to constitute a "substantial step" toward attempting to have intercourse with the complaintant as required by 11 Del. C. § 531 (2) defining the essential elements of "Sexual Intercourse":

> Any act of physical union of the genitalia or anus of one person with the mouth, anus, or genitalia of another person. It occurs upon any penetration, however slight. Ejaculation is not required. This offense encompasses the crime commonly known as rape and sodomy.

During the trial of the defendant's, all the evidence of attempted rape related to neither attempt anal, vaginal, or oral intercourse. There was no evidence submitted by the State that would have supported a charge of attempted sexual intercourse. The complaintant's testimony was introduce as the sole evidence to convict the defendant of attempt sexual intercourse which in and of itself exculpated

defendant of such intent or state of mind. The complaintant testified in response to when asked by defense counsel At (c-26, L.17-18) "You also stated no one tried to penetrate you with their penis"? At (c-26, L.19) the complaintant responded ... "Exactly." As defense counsel continued examination it went as follow: There was no attempt to penetrate either (At c-26, L.20). The Complaintant relied At (c-26, L.21-22) "He did try with his hands". Counsel continued at (c-26, L.23) "So someone just touched your breast and buttocks and made no attempt to penetrate you? (At c-27, L.1). The complaintant responded ..."He touched my breast. He pulled on my leg. He turn me over. He put his hands between my buttocks. I felt a burning sensation as if his fingers had penetrated me. (At c-27, L.2).

Since a determination of the defendant's intent involves an examination of his mental state ... it necessarily must be proved by his statements

or actions. State v. Holley, 381 A.2d 539 (1977). This is one
way of saying that a person's intention is to be infered
from his conduct and the surrounding circumstances.

In the present case, the inference to be drawn from
the defendant's allege actions does not satisfy the elements
of intent beyond a reasonable doubt under Delaware
Law.

The actions of defendant as stated by the complaintant
during trial on re-cross examination, at (B-54, L.4) "Did
You ever see his sexual member"? Plaintiff responded
at (B-54, L.5) "NO". At (B-54, L.7-8)..."Did You
ever feel anything that might be his sexual member
during this attack"? Again, plaintiff responded (at
B-54, L.9) "No." Did you feel any unusal hardness
in his hip region? (B-54, L.10-11) the plaintiff
responded (B-54, L.12)..."No." When asked did
the assailant lay on her? (At B-12, L.9) Plaintiff
responded (B-12, L.10-11) "No"; he was sitting on
me like this (she was indicating a 90-degree angle

with her hands and it was reiterated in (B-12) when plaintiff indicated position), he was sitting on her the entire time. When asked did the assailant remove at any time any clothes he had on (at B-13, L.1-2) - The plaintiff responded "No." AT (B-13, L.3) When asked did the Assailant ever do any vibrating-pelvic movements? (B-13, L.4-5) Plaintiff responded "No." (B-13, L.6) When asked so there was no thrusting-pelvic movements? (B-13, L.10) Plaintiff responded "No", he was sitting the whole time on top of me. (B-13, L.4).

These were the actions of the allege defendant as testified to by the complaintant which demonstrate at no point did he act with the mental intent to engage in sexual intercourse with the allege victim or took a substantial step defined under Delaware law that would have created a "beyond a reasonable doubt" conclusion in the jury minds that a clear and logical inference could be drawn from this insufficient evidence that it was defendant's intention to engage in sexual intercourse.

The trial counsel's failure to raise these arguments on direct appeal was grossly ineffective and careless.

It is the defendant/movant's contention that he was unduly prejudiced by the counsel's (Haller's) conduct so as to undermine the outcome of the proceedings and there is more than a reasonable probability that but for trial counsel's egregious failure to join actively in the process, the results of the proceedings would have turned out differently.

As to arguments one and the attendant five (5) items under the claim of ineffective assistance of counsel, the defendant would ask that this Honorable Court take it upon itself after consideration and review of this motion to agree as to there being no doubt that the defendant was denied his sixth Amendment Constitutional right; and was truly denied effective assistance of counsel; and as such would now request that this Honorable court reverse the convictions and sentences and grant a new trial.

Argument:

There was Insufficient
evidence to sustain a
conviction on count I
of Attempted Rape in the
first degree.

Standard An Scope of Review it was Error to Allow the Appello.
to be convicted of a charge where there was not sufficient
proof. Under Due Process it requires that no person be made
to suffer the onus of a criminal conviction except upon sufficie.
proof, defined as evidence necessary to convince a trier of fact
beyond a Reasonable doubt of the existence of every element
of the offense. According to Jackson v Virginia 99. S. Ct 2781,
143 U.S. 307 (1979)

"the critical inquiry on review of the sufficiency of the evidence
to support a criminal conviction must be not only to determine
whether the jury was properly instructed on Reasonable doubt, but
to determine whether the Record evidence could reasonably suppor
a finding of guilt beyond a Reasonable doubt. The Relevant
question is whether after reviewing the evidence In the
light most favorable to the prosecution, any Rational trier of fact
could have found the essential elements of the crime beyond a

f the complaintiff when questioned by the state and the defense, the evidence in support of the defendant's conviction can not be fairly characterized as sufficient to have led. A rational trice of fact to find guilt beyond a reasonable doubt of Count one of Attempted Rape in the first degree. Although the evidence admittingly discloses and indecent assault it did not establish and attempt to commit the crime of Rape in the first degree. There was no evidence introduced during the trial that the defendant attempted to engage in forcible sexual intercourse with the plaintiff. There must be a substantial step towards the crime intended, and intent to produce emission semen. Without an attempt to engage in intercourse, its not sufficiently proving that the conscious purpose of the Appellant was to Rape the plaintiff. According to the testimony that was used as evidence during the trial the Appellant had the ability, the isolated conditions and proper amount of timing to Rape the plaintiff. The crime was not disturbed nor did anyone interfer with the activities f the situation the Appellant Allegelly just left.

Under the stature of Del 11 531(2) Attempt is defined in pertinent part is follow: A person is guilty of an attempt to commit a crime if the person (2) Intentionally does... Anything which under the circumstances as he believes them to be is, a substantial step in a course of conduct anned to culminate in his commission of the crime by the person.

Section 532 defines the term "substantial step" as follow: A substantial step under 531 of this title is an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which the defendant is charged with attempting.

endant acted with the specific intent, so as to constitute a "sustantial step" toward attempting to have intercourse with the complainti ne victims testimony during cross-examination by the defense clearly ablish reasonable doubt as to whether the defendant's conscious purpose as to engage in intercourse as described under 11 Del.C. 761

> Any act of a physical union of the genitalia or anus of one person with the mouth, anus, or genitalia of another person. It occurs upon any penetration however slight.

In the case at bar where the intent to engage in intercourse is a tical issue, the complaintiff testified to the following. (B-12) 9 When ask did the assailant lay on her? (B-12) 10, 11 Plaintiff Respond "No", he was ittin on me like this, she was indicating a 90-degree angle with her hands. And its was reinterated when (B-12) plaintiff indicated position, he was sitting on her the intire time. (B-13) 1, 2, When ask did the assailant at any time remove any clothes he had on, Plaintiff Respond "No" (B-13) 3 when ask did the assailant ever do any vibrating pelvic movements? (B-13) 4, 5 Plaintiff Respond "No" (B-13) 6 When asked so their was no thrusting pelvic movements? (B-13) 10 Plaintiff Respond (B-13) 11 "No, he was sitting the whole time on top of me.

None of these actions are sufficient to sustain a conviction for attempt rape in the first degree when the intent was never established beyond reasonable doubt. If the sole purpose was to engage in intercourse he appellant would have atleast attempted to remove his clothing, or put im self in position to engage in "intercourse". The appellant never made a substantial step to the commission of the rape, as the complaintiff testified.

He put his hands between my buttocks. I felt a burning sensation as
F his fingers had penetrated me.

The burning sensation the complaintiff testified about was introduce
Into evidence as "Vicks Vapor Rub. After the complaintiff's clothes were
remove the Appellant never try to inkert his touge or penis Into the victim
but a Attempt was made to wipe Vicks Vapor Rub between the complaintiffs legs;
when that was unsuccessful a second attempt was made by turning the complaintif
iver and wiping it from the back of the buttocks. This Alone shows the
mind state of the Appellant, was it to engage In Intercourse but to burn the
complaintiff by Appling Vicks to her private area. No one can argue the intent
vas to burn the victim thats the only obvious Reason their would be to apply
the cream between the legs, and with such a harmful effect to open wounds
heirs no possible way Intercourse could have manifested with the Appellant causing
harm to himself. Also As the complaintiff stated on Re-cross examination:
C-26) 17, 18 You Also stated no one ever tried to penetrate you with
their penis?. (C-26) 19 Exactly. There was no Attempted to penetrate
Either (C-26) 21, 22 He did try with his hands.

At no certain point and time was the conscious purpose to
ntentionally engage In Intercourse As the Actions of the defendant
proved their was never a phyiscal Attempt to engage In
sexual Intercourse. For this Reason Alone the defendant should
Not have been convicted upon Insufficient. The defendant
Now Ask this Honorable Court to Reverse and Remand this
case back For A new trial.

40

The prosecution violated Batson
V Kentucky by using peremptory
Challenges to strike the only African
American From the jury panel because
of race.

Scope and standard of review Batson held that the Equal
Protection Clause of the Fourteenth Amendment to United States Const.
precludes the prosecutor in a state criminal action from exercising
peremptory challenges based upon race.

In the case at bar the prosecutor violated the Batson V
Kentucky by exercising the use of peremptory challenges in a discriminatory
manner. United State Supreme Court's decision in Batson 476 U.S.
19, 106 S. Ct. 1712 90 L.Ed. 2d. 69 (1986). Batson held that Equal
Protection Clause of the Fourteenth Amendment to the United States
Const. precludes the prosecutor in a state criminal action from
exercising peremptory challenges based on race. A defendant can
use evidence gather solely from his own trial to establish a
prima facie case of the prosecutors discriminatory use of peremptory
challenges.

In particular Batson held that a defendant could establish a
prima facie case of purposeful discrimination by showing that
1) Defendant is a member of a cognizable racial group, 2)
the groups members have been excluded from the defendant's jury, an

he exclusion was based on race. Batson further held that
if the trial judge is satisfied that the defendant has establish
a <u>Prima Facie</u> "the burden shifts to the state to come forward
with a neutral explanation for challenging black jurors".
The prosecutor's explanation for the peremptory challenges must be
more than an affirmation of good faith or an assumption that
the challenged juror would have been partial to the defendant
because of race. Although it need not rise to the level of
justifying exercise of a challenge for cause it must be related
to the particular case to be tried.

   In the case a bar Walter L. Smith a young African
American male was on trial for Attempted Rape of a Hispanic
Female. During the jury selection process the state never
exercised their peremptory challenges, until a young African
American female was selected to be on the jury. ( This establish
the First Requirement In Batson v Kentucky) And almost immediately
after being selected to the jury panel the prosecutor, when before
declining to use peremptory challenges; immediately seeing the black
female struck her intentionally securing a all white jury. (This
establish the second Requirement In Batson v Kentucky) The circumstances
of the exclusion and the jury selection process the state had
know prior Information on the jurors, because they themselves didn't
know who was being selected; outside of the jury profile sheet which
contain, age, Residence, employment, Race. So with no preceptual material
present their was no Reason to exclude this potential juror outside
of Race. The state had the opportunity before this black juror
was selected to exercise it's challenges but it decline, because it
had what it wanted at that time a "all white jury"; so this gives
reason to why once a black juror was selected they decided to

being selected. (This establish the third Requirement In Batson V
tucky)

It is explicitly evident that the prosecutor exercise the
remptory challenges on discriminatory grounds. In <u>Jones v Ryan</u>
87 F.2d 960 (3d Cir. 1993) the Circuit Court noted and Reaffirmed
is Ruling In <u>Goverment of Virgin Island v Forte</u> 865 F.2d 59, 64 (3d Cir.)
FF'd mem. 904 F.2d 694 (1990) cert. denied, 111 S. Ct. 2262 (1991) that
violation of the <u>Batson</u> rule occurs when RACE Is used as a
Factor In the exercise of a peremptory challenge."

In <u>Riley v Delaware</u> 496 A.2d at 1013-20 See also
itchell v State 295 Ark. 341 750 S.W. 2d. 936 (1988) Exclusion
F <u>ONE MINORITY</u> group member Is sufficient to establish a
prima Facie" CASE when this juror Is the <u>only member</u> of the
defendants RACE on the PANEL of prospective JURORS; Stanley
. State 315 Md. 50 542 A.2d 1267, 1285 (1988)
The discriminatory exclusion of the only African American
potential JUROR on the PANEL WAS A Violation of the defendant
Right to the Equal Protection Clause of the Fourteeth Amendment
and his Right to a FAIR and impartial jury Del. C. Ann. Const.
Art 1 & 7. U.S.C.A. Const. Amend 6.

Where As here, a <u>prima facie</u> case of discrimination has
een established" the prosecutor must assert a clear specific
Reason beyond "intuitive judgment" or "good faith" For challenging
members of a RACIAL group. <u>United States v Clemons</u> 843 F.2d
141, 747 (3d Cir.) cert. denied, 488 U.S. 835 (1988) (citations omitted)
IF no such explanation Is Forthcoming For even one prospective
juror, the defendant Is entitled to a new trial. See <u>Jones</u>
987 F.2d At 974-75 (Reversing the denial of habeas corpus

uROR; HARRISON v RYAN 909 F.2d 84 ,88 (3d Cir). ..

"EXCLUSION of one black juROR FROM the jury on the BASIS of
ice IS sufficient to require a new trial pursuant to BATSON ");
ct. denied, 498 U.S. 1003 (1990).

As to ARGUMENT three under the claim the state exercise
is peremptory challenges IN A discriminatory manner, the Appellant
would Ask that this Honorable court take it upon itself AFTER
onsideration And Review of this Motion to agree As to there
being no doubt that the defendant WAS denied his FourTeenth
Amendment Constitutional Right to the EQUAL PROTECTION Clause.
And AS such would now Request that this Honorable
Court Reverse the convictions and sentences and gRANT a
new tRiAL.

44

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WALTER L. SMITH, | § | |
| | § | |
| Defendant Below- | § | No. 202, 2004 |
| Appellant, | § | |
| | § | Court Below---Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for Sussex County |
| STATE OF DELAWARE, | § | Cr. ID No. 0105019765 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: June 14, 2004
Decided: August 13, 2004

Before **STEELE**, Chief Justice, **HOLLAND** and **JACOBS**, Justices

## O R D E R

This 13th day of August 2004, it appears to the Court that:

(1)    On May 13, 2004, the Court received the appellant's notice of appeal from the Superior Court's April 7, 2004 order denying his motion for postconviction relief. Pursuant to Supreme Court Rule 6, a timely notice of appeal should have been filed on or before May 7, 2004.[1]

(2)    On May 13, 2004, the Clerk issued a notice pursuant to Supreme Court Rule 29(b) directing the appellant to show cause why the appeal should not be dismissed as untimely filed. The appellant filed his response to the notice to show cause on June 1, 2004. The Clerk then directed the State to file an answer.

---

[1] The notice of appeal bears the date of May 5, 2004.

Ex. B

rule mandating the timely filing of a notice of appeal. Thus, the Court concludes

that the within appeal must be dismissed.

NOW, THEREFORE, IT IS ORDERED, pursuant to Supreme Court Rules

6(a) and 29(b), that the within appeal is DISMISSED.

BY THE COURT:

Justice

SUPERIOR COURT
OF THE
STATE OF DELAWARE

T. Henley Graves
  *Resident Judge*

SUSSEX COUNTY COURTHOUSE
THE CIRCLE
P.O. BOX 746
GEORGETOWN, DE 19947
(302) 856-5257

April 7, 2004

N440
Walter L. Smith
SBI #00246639
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

     RE:   Case No. 0105019765-R1

Dear Mr. Smith:

On December 24, 2003, Mr. Smith filed a motion for post conviction relief pursuant to Superior Court Criminal Rule 61.

Following a jury trial the defendant was found guilty on March 14, 2002, of the offenses of attempted rape in the first degree, assault in the first degree, burglary in the first degree, and wearing a disguise during the commission of a felony. The jury found him not guilty of the possession of burglary tools. With the benefit of a presentence investigation, and based upon the defendant's history, the court sentenced him to a period of 36 years of incarceration to be followed by probation.

The defendant filed an appeal and his convictions were affirmed. <u>Walter L. Smith, Sr., v. State of Delaware</u>, Del. Supreme No. 271, 2002, Veasey, CJ (Dec. 23, 2002) Two issues were raised on appeal, neither of which are relevant to the present application.

## FACTUAL BACKGROUND

The victim testified she was sleeping alone when she was awoken in the middle of the night by an intruder wearing a black coat, black gloves and a mask. She was severely beaten. She played dead several times. During one occasion the intruder removed her pajama pants and underwear, grabbed her breast and tried to insert his hand into her vagina. She kept her legs pressed tightly together. He placed something believed to be Vicks vapor rub between her buttocks, causing her to feel a burning sensation. Then he left her bedroom and she heard drawers being opened in the kitchen. She called "911".

*Ex. C*

Smith testified he went to the apartment with two other individuals to commit a burglary. He knew who lived in the apartment. He waited outside, but subsequently entered the apartment. He admitted hitting a person who was under a blanket, but stopped and left when he realized it was a woman.

The victim testified she saw only one person in her apartment.

The defendant was arrested later due to investigation and luck. Prescription eye glasses left in the bedroom were traced to him. This then led to a DNA match.

The Court requested that trial counsel answer defendant's allegations by way of a Rule 61(g) affidavit. Trial counsel did this. Defendant was given an opportunity to respond, but he did not.

## PROCEDURAL BARS

In Ground Two the defendant alleges many claims of ineffective counsel. These are not barred as this is defendant's first opportunity to raise them.

In Ground One the defendant alleges there was insufficient evidence for the jury to conclude there existed an intent to rape, to commit sexual intercourse. This claim is procedurally barred under Supreme Court Criminal Rule 61(i)(3). Defendant has offered no reason or cause as to why this issue wasn't raised on appeal. Defendant claims he wasn't consulted about the appeal but in his attorney's Rule61(g) affidavit it is reported that the attorney reviewed with Mr. Smith potential issues for appeal, but "insufficient evidence" wasn't considered by the attorney, nor did the defendant raise it. The defendant was given an opportunity to file a Rule 61(g) affidavit but did not do so. There has been no cause shown why this wasn't addressed on appeal. Nor has there been any prejudice shown, and this is probably why this claim wasn't included in the appeal. What a person is intending "to attempt" frequently can only be determined by inference, unless the person states his intention. There were allegations of taking off the victim's pajamas and underwear, groping her breast, attempting to get his hands between her legs and into her vagina. This was evidence in which the defendant's intent could be inferred by the jury, and the jury could reasonably conclude there was a course of conduct leading toward having sexual intercourse. There was evidence to support his conviction of attempted rape. This claim is procedurally barred.

Ground Three is an allegation that the State used a preemptory challenge based on race alone, in violation of Batson v. Kentucky, 476 U.S. 79 (1986). This ground is procedurally barred as it was not raised at trial nor on appeal. There has been no showing of cause for the failure to raise and preserve the claim, nor has there been a showing of prejudice under Rule 61(i)(3). In trial counsel's Rule 61(g) affidavit he reports he is familiar with Batson and would have objected if he believed a violation occurred. He also reports the defendant was very active in the jury selection process and had there been a concern it would have been raised.

This claim appears to be made on the defendant's mistaken belief that the State had no information to base its preemptory challenge other than observing the juror. Both the State and Defense have the majority of information the juror provides in the jury profile or questionnaire. Both sides have the opportunity to gain further information, such as a person's criminal record, if they so choose.

The defendant's claim is based on the single use of a preemptory challenge of an African American. There is no basis to conclude a Batson violation occurred. Therefore, there is no prejudice. This claim is procedurally barred.

## CLAIMS OF INEFFECTIVE COUNSEL

In Ground Two the defendant alleges that his attorney was ineffective in many different ways. He alleges both individually and cumulatively his attorney's ineffective assistance of counsel prejudiced his right to have a fair trial. The majority of his comments are rambling and conclusory. As best I can determine, his allegations of ineffective assistance of counsel are as follows:

a.    His attorney was ineffective for failing "to call any attention to and properly investigate testimony that would have been favorable to him" (the defendant).
b.    He failed to conduct a reasonable investigation including an interview of the victim, thereby failing to see the victim's testimony was "fixed".
c.    He never developed a trial strategy and was unprepared.
d.    He did not object to a black being struck from the jury.
e.    He just was not aggressive enough.
f.    There was insufficient evidence for the defendant to be convicted of attempted rape in the first degree, and defense counsel did not raise this on appeal.

In order for the defendant to prevail on a claim of ineffective assistance of counsel he must establish both that his attorney's performance fell below an objective standard of professional competence; and, but for the unprofessional errors, there was a reasonable probability that the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668 (1984) If the defendant fails to establish either deficient performance by his attorney or prejudice impacting the jury's verdict, then the claim fails.

The claims based on Batson and insufficiency of evidence have been decided already. I've determined there was no deficient performance nor prejudice, so these claims are denied.

The defendant alleges that his attorney failed to properly make an investigation in this case in failing to find evidence which would have been favorable to him. The defendant cites the testimony of Tracy Roberts as an example. Ms. Roberts is a registered nurse working at Beebe Hospital. She has a certification as a sexual assault nurse examiner. After a doctor had finished treating the victim in the emergency room, Ms. Roberts then spent several hours with her gathering physical evidence concerning the allegations of sexual assault. She gathered evidence of the bruises, cuts, etc. She also interviewed the victim with the benefit of an interpreter

because the victim spoke only Spanish. The defendant alleges that during this interview the victim made contradictory statements that were used to convict the defendant and not used to prepare his defense. The defendant does not provide any proof of these allegations.

During the trial testimony of Ms. Roberts the State did not ask what Ms. Soto informed her by way of the interpreter, as to the allegations of a sexual assault. Her testimony was limited to her physical observations of the victim, i.e. photographing bruises and other injuries and gathering evidence. I believe the State recognized the evidentiary problems existing as (i) these statements were not made for purposes of treatment as they took place many hours after the doctors had examined and treated her; and (ii) there would be difficulties in complying with 11 Del.C. 3507 and the relevant case law when interpreters are used. Diaz v. State, Del. Supreme, 743 A2d, 1166 (1999)

Had Ms. Roberts testified as to what the victim told her happened, I have no way of determining if it would have helped or not helped the State or the defendant. It is not a part of the record, and again, there has been no proffer by the defendant. Therefore, the defendant must fail as to the prejudice prong under Strickland. He has not shown that, even if his trial attorney had conducted a more thorough investigation and/or examination of Ms. Roberts, there would have been favorable testimony which impacted the trial result. This claim is denied.

Likewise, the defendant claims that his attorney was ineffective because he failed to interview other witnesses who allegedly would have provided testimony that would have contrasted the victim's trial testimony and contradicted other versions she told the other witnesses. By way of example, the defendant alleges that Dr. Maribel Garcia-Zaragoza would have testified that the victim said that the assailant "tried to unbutton his pants". The defendant contrasts this to the victim's trial testimony about doing something with his belt. The defendant makes the allegation that Dr. Garcia-Zaragoza would have testified to the above, but he does not state the basis for making these allegations. There is no report attached to the Rule 61 indicating that it was a part of the investigation, nor is there any affidavit from the doctor. Also, assuming the doctor could have testified to such allegations, both the State and the defense were aware of the court's concern that any testimony elicited pursuant to 11 Del. C. 3507 must meet the Diaz test.

Under 11 Del.C. 3507 there is a requirement that the witness report exactly what was said by the declarant. The Diaz decision provided guidance in cases where the declarant does not speak English. The person communicating with the declarant must be proficient in the declarant's language so as to assure the person understands what the declarant is reporting.

The defense did call Officer Pedro Consuegra as a defense witness to impeach the victim. He is a police officer who is bilingual in English and Spanish. He was asked to assist the Milton police as a translator. He reported she said the assailant attempted to pull his zipper down, and she said nothing about the belt.

I conclude that the defendant has not shown deficient performance by his attorney. The defendant has not provided the Court a basis to conclude his defense attorney was deficient. The record establishes that his attorney attempted to impeach the victim's trial testimony by way of Officer Consuegra. I note defense counsel was able to do this in mid-stream as he did not know what the victim's trial testimony would be. Nor do I find any prejudice to the defendant based on the overwhelming evidence in this case. An attack on the victim's credibility based on whether she reported he was unbuttoning his pants versus unzipping his pants, or doing something with his belt, would not have changed the result of this trial. The damaging evidence was that this lady was severely beaten and sexually assaulted in her dark bedroom by an assailant who was masked. Her credibility was not the critical issue in the defendant's conviction. It was his identification through the eyeglasses and DNA.

In trial counsel's Rule 61(g) affidavit, he addresses the defendant's claim as to interviewing the victim. There were numerous efforts by the defense to interview the victim. She was either not home, didn't want to see the defense investigator, or in Puerto Rico. Trial counsel made reasonable efforts to interview this person prior to trial. Trial counsel efforts were not deficient.

In trial counsel's Rule 61(g) affidavit he reviews the contacts and communications with the defendant. Trial counsel maintained a steady stream of communication with the defendant. There is no factual basis to the claim that the defendant's case was essentially ignored, or that trial counsel didn't keep him informed, or that trial counsel had not prepared for trial. The affidavit also establishes there was reasonable communication with the defendant as to the appeal issues and defendant received copies of the briefs. Trial counsel was not deficient and defendant has not established prejudice.

I find the claim that trial counsel was not aggressive enough to be frivolous. A defendant is entitled to zealous counsel and that doesn't mean an attorney must be aggressive or have an "attitude" against the State.

In summary, I find that counsel did an effective job with the cards he was dealt. He wasn't effective in the defendant's eyes as it didn't result in an acquittal, but that result was improbable in view of the victim's testimony, the DNA testimony, and the eyeglasses' connection. Trial counsel's performance was not deficient in the manner alleged by the defendant. The defendant has not shown that any of the alleged errors would have probably altered the outcome of the trial. The claims based on ineffective assistance of counsel are denied.

The Rule 61 motion for post conviction relief is denied.

Very truly yours,

Judge T. Henley Graves

oc:    Prothonotary
cc:    Karl Haller, Esquire
       Department of Justice